**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-03037-CMA-MJW

DALE J. CHAMBERLAIN,

    Plaintiff,

v.

CAROL DUNKER, in her capacity as Town Clerk for Town of Ovid, Colorado, and SHERIFF RANDY PECK, in his capacity as Sheriff for County of Sedgwick, Colorado,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on Defendants' Motions to Dismiss. (Doc. ## 18, 21.) Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, Defendants' motions are granted.

## I.     BACKGROUND

**A.     FACTS**[1]

Plaintiff Dale Chamberlain is a resident of and restaurant owner in Ovid, Colorado. Defendants Carol Dunker and Sheriff Randy Peck are the Town Clerk of Ovid and Sheriff of Sedgwick County, respectively. The instant suit stems from events occurring on and following November 8, 2011, when Plaintiff went to Ovid's Town Hall to pay the fee for his restaurant's liquor license. Ms. Dunker refused to accept Plaintiff's

---

[1] Unless otherwise noted, the following facts are allegations from Plaintiff's Amended Complaint (Doc. # 37 at 2-14) and are deemed true for purposes of the instant motion.

payment and requested that he return later that day.  When Plaintiff returned later that afternoon, he was "accosted and physically assaulted repeatedly" by two individuals, Lee Jones and Larry Hamilton, outside of Town Hall.  "In response to the assault, persons on behalf of Plaintiff [], contacted the Sedgwick County Sheriff's Office seeking assistance to break up the assault . . . ."  (Doc. # 37 at 3.)  Fifteen minutes passed before an unnamed Sheriff's Deputy arrived at the scene.  Approximately ten minutes later, Sheriff Peck arrived at the scene.  Aside from the Deputy looking at Plaintiff's hands and saying that Plaintiff was "okay," none of the Sheriff's Office representatives acknowledged Plaintiff "in any way."  The Deputy and Sheriff Peck spoke to Ms. Dunker, who was at the scene.  (*Id.* at 2-4.)

When Plaintiff requested that the officers file charges against his assailants, Sheriff Peck provided him with Sedgwick County Sheriff's Uniform Summons and Complaint forms.  Sheriff Peck instructed Plaintiff to sign the forms in the "Officers" section after filling in the information regarding the assailants and their violation of C.R.S. § 18-3-204, Third Degree Assault.  (*Id.* at 4-5.)

Sheriff Peck returned to Plaintiff's restaurant later that day with a copy of a Temporary Restraining Order, which mandated that Plaintiff stay at least fifty yards away from Dunker.  Sheriff Peck advised Plaintiff that any violation would result in his arrest.  Plaintiff informed Sheriff Peck that his residence was within fifty yards of the Town Hall, where Dunker worked.  (*Id.* at 5-6.)

Two days later, on November 10, 2011, Jones and Hamilton, the individuals who assaulted Plaintiff, filed complaints against Plaintiff alleging violations of C.R.S. § 18-3-

203 (Second Degree Assault), C.R.S. § 18-9-106(1)(d) (Disorderly Conduct), and C.R.S. § 18-8-111(1)(c) (False Reporting to Authorities). Sheriff Peck also instructed Jones and Hamilton to complete Sedgwick County Sheriff's Uniform Summons and Complaint forms and sign in the "Officers" box. (*Id.* at 6-7.)

The District Attorney sought dismissal of the actions against Plaintiff based on these complaints when it became clear that the forms were not signed by "Law Enforcement Officers." Likewise, the District Attorney moved to dismiss the summons and complaint against Jones and Hamilton for the same reason. (*Id.* at 9-10.)

On November 21, 2011, the Sedgwick County Court conducted a hearing on the Temporary Restraining Order. At the hearing, Ms. Dunker testified that Plaintiff physically threatened her and she was afraid for her safety. Ms. Dunker also called several other witnesses. Sheriff Peck attended the hearing and was seen speaking with witnesses and coaching them in their testimony. (Doc. # 37 at 8-9.) "At the close of the hearing, the County Court issued a Permanent Civil Protection Order barring Plaintiff Dale J. Chamberlain from further contact with Defendant Carol Dunker, except for minor and extremely limited contacts to 'conduct city business' and for appearances at Town Board meetings. He was otherwise proscribed from any other contact with Ms. Dunker, including approaching her within a radius of 50 yards . . . ." (*Id.* at 8.)

### B. PROCEDURAL HISTORY

On November 7, 2013, Plaintiff Dale Chamberlain and his wife initiated this action, bringing a claim of conspiracy pursuant to 42 U.S.C. §§ 1983 and 1985. (Doc. # 1.) On March 25, 2014, this Court dismissed Plaintiff's claims against Defendants

3

Jones and Hamilton due to Plaintiff's failure to prosecute.  (Doc. # 25.)  Defendants Carol Dunker and Sheriff Randy Peck each filed a motion to dismiss on April 7, 2014.  (Doc. ## 18, 21.)[2]  Plaintiff responded (Doc. # 27) and Defendants replied (Doc. ## 32, 33.)

On June 16, 2014, the Court granted Plaintiff leave to amend his complaint to withdraw all claims on behalf of Elaine Chamberlain and his claims pursuant to § 1985.  (Doc. # 37.)  The Court accepted Defendants' motions to dismiss (Doc. ## 18, 21) as responsive to the Amended Complaint.

## II.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to "test the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief."  *Id.* at 679 (internal citations and quotation marks omitted) (alterations incorporated).

In reviewing a Rule 12(b)(6) motion, a court must accept as true all the well-pleaded allegations of the complaint and construe them in the light most favorable to the plaintiff.  *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  However, the

---

[2]  Each of these motions is substantially similar; therefore, the Court addresses them together in this Order.

court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### III.     ANALYSIS

Plaintiff alleges that Defendants conspired to deprive him of his constitutional equal protection and due process rights under the Fourteenth Amendment.[3] "To establish a *prima facie* claim of conspiracy under 42 U.S.C. § 1983, the Plaintiff must make a factual showing for each of the following elements: (1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Jorgensen v. Montgomery*, No. 06-cv-00853-MSK-BNB, 2008 WL 216398 (D. Colo. Jan. 24, 2008); *see also Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 789 (10th Cir. 2013); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir.1998). "[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir. 1990) (collecting cases). In other words, conspiracy but not an actual deprivation of constitutional rights—or vice versa— is insufficient. *See id.* "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (citing *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.1989)).

---

[3] In the Amended Complaint, under the title "claims for relief," Plaintiff also includes allegations regarding emotional distress and deprivation of constitutional rights – exemplary damages. However, emotional distress and deprivation of constitutional rights – exemplary damages are claims for damages, rather than substantive claims. Thus, the Court need only examine whether the conspiracy allegations survive the Rule 12(b)(6) pleading standard.

To state a cause of action for conspiracy under § 1983, a plaintiff must "allege specific facts showing agreement and concerted action among [defendants] . . . ." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Plaintiff must demonstrate "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990)) (alteration incorporated). Thus, a mere opportunity to confer and communicate is insufficient. *See Tonkovich*, 159 F.3d at 532.

Plaintiff argues that he has put forth sufficient factual allegations to establish by reasonable inference that Ms. Dunker and Sheriff Peck had an agreement. While Plaintiff asserts only a single broad conspiracy claim, the Court observes that Plaintiff actually alleges the existence of four instances of concerted action:

1. "Defendant Carol Dunker conferred and conspired with individuals Lee E. Jones and Larry M. Hamilton to initiate the assault upon Plaintiff." (Doc. # 37 at 3);

2. The "Temporary Restraining Order was secured through the consultation and conspiracy between [Ms. Dunker] and [Sheriff Peck]." (Doc. # 37 at 6);

3. "Defendant Sheriff Randy Peck handed" forms for filing a complaint against Plaintiff to Plaintiff's alleged attackers. (Doc. # 37 at 4-5); and

4. Defendants "conferred and conspired" "to engage in the hearing in a manner so as to shape the testimony of witnesses" at the restraining order hearing. (Doc. # 37 at 8).

Each of these conspiracy allegations is merely conclusory and does not contain factual allegations that might move the claim from sheer possibility to plausibility.

6

Although the Court must draw reasonable inferences in favor of the Plaintiff, it "need not sift through Plaintiffs' entire complaint in search of a coherent theory of their conspiracy claim." *Afola v. Corr. Corp. of Am.*, No. 12-cv-02394-JLK, 2013 WL 2477126, *4 (D. Colo. June 10, 2013).

The Court does not find Plaintiff's proclaimed inferences to be reasonable based on the alleged facts. For the first alleged meeting of the minds, Plaintiff provides no context regarding Sheriff Peck's involvement, the relationship between Ms. Dunker and Plaintiff's assailants, nor any motivation for the attack; in fact, he says that he was assaulted "for no apparent reason." (Doc. # 71 at 3.) The second alleged meeting of the minds suffers from the same problem. There is nothing to indicate that Ms. Dunker filed her complaint for any reason other than fear for her safety. Moreover, there is no indication Sheriff Peck did anything beyond carrying out his duty when he received the Temporary Restraining Order and served it upon Plaintiff.

In Plaintiff's third alleged instance, there is no indication that Sheriff Peck did anything more than provide forms to men who had been involved in a physical altercation. Plaintiff provides no explanation for why Defendants would choose misuse of official forms as their method to deprive Plaintiff of his rights. It defies logic that Sheriff Peck would intentionally provide the wrong forms to both Plaintiff **and his assailants** if he sought to injure Plaintiff.

The final instance of alleged meeting of the minds at the restraining order hearing is also devoid of any factual support. Even assuming, as is required, that Sheriff Peck was seen speaking with witnesses at the restraining order hearing, Plaintiff has alleged

7

no facts that indicate that Ms. Dunker was involved or knew that Sheriff Peck was speaking with witnesses about their testimony.

Plaintiff argues that the entire course of Defendants' conduct, including during the incident outside of Town Hall on November 9, 2011, and at the restraining order hearing, "creates a context in which plausibility of inferred, if not actual agreement, between Defendant Sheriff Randy Peck and Ms. Dunker occurred . . . ." (Doc. # 27 at 6.) Beyond this conclusory statement, Plaintiff has not provided any allegations to support the inference that a meeting of the minds occurred. He has not provided, for example, any explanation for Defendants' motivations to abridge Plaintiff's rights. At most, Plaintiff has alleged parallel conduct. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010) (citing *Twombly*, 550 U.S. at 562) (applying *Twombly*'s reasoning regarding the Sherman Act to claims of constitutional violations). Thus, the Court cannot reasonably infer a meeting of the minds based upon the facts alleged by Plaintiff. *See Tonkovich*, 159 F.3d at 533; *Afola*, 2013 WL 2477126, at *4-5.

While Plaintiff's failure to sufficiently plead an agreement and concerted action would be enough to dismiss this claim, he further fails to sufficiently allege the constitutional violations requisite for a § 1983 conspiracy claim. *See Dixon*, 898 F.2d at 1449 (collecting cases); *see also Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, plaintiff must show an actual abridgement of some federally-secured right.") (citations and quotations omitted).

"To prevail on an equal protection claim, a plaintiff must show that she was treated differently from others who were similarly situated." *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 53 (10th Cir. 2013) (citing *Tonkovich*, 159 F.3d at 532); *see City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.") (internal quotation marks omitted). Plaintiff fails to identify any individual who is similarly situated, but has enjoyed different treatment. In fact, with respect to his allegations that Sheriff Peck provided Plaintiff with inappropriate forms on which to record a complaint, Plaintiff's alleged attackers were also given the same forms. Moreover, Plaintiff failed to identify anyone else who engaged in similar behavior, but did not receive a restraining order. *See Taylor*, 713 F.3d at 53. Thus, Plaintiff has failed to state an equal protection claim.

Likewise, Plaintiff's due process claim fails to allege a constitutional violation. An *ex parte* temporary restraining order does not violate due process when it is authorized by state statute, issued by a county court, and provided Plaintiff an opportunity for an immediate hearing. *See Cortese v. Black*, 87 F.3d 1327, *3 (10th Cir. 1996) (unpublished table decision). Colorado Rule of Civil Procedure 65(b) authorizes the issuance of temporary restraining orders within defined limitations. In 2011, Colorado Revised Statue § 13-14-102(3)-(5) provided that, under specific circumstances, a court could issue a temporary restraining order following an *ex parte* hearing stemming from a complaint seeking a civil protection order. C.R.S. § 13-14-

9

102(3)-(5), *eff.* Aug. 11, 2010, *repealed by* Laws 2013, Ch. 218, § 7, *eff.* July 1, 2013. Plaintiff does not allege that the temporary restraining order violated any of the requirements set forth in Colo. R. Civ. P. 65(b) or C.R.S. § 13-14-102(3)-(5). Plaintiff's general and vague argument fails to allege a violation of due process. *See Peace v. Kerlikowske*, 237 F. App'x 157, 160 (9th Cir. 2007) (rejecting due process claims directed against the initial temporary restraining order complainant because "a judicial officer's exercise of independent judgment in the course of his official duties [including the *ex parte* determination to issue a temporary restraining order] is a superseding cause that breaks the chain of causation . . . ."); *see also In re Marriage of Fiffe*, 140 P.3d 160, 162 (Colo. App. 2005) (issuance of a permanent restraining order does not require imminent danger but issuance of a temporary restraining order does require an "extreme circumstance of imminent danger" in order to comply with due process) (citation omitted).

Plaintiff also alleges that Defendants deprived him of due process through the communications with witnesses at the restraining order hearing. However, Plaintiff does not allege any facts regarding how or why the witness testimony changed the outcome of the hearing or how the testimony was perjured or coerced. Further, Plaintiff does not claim that the trial court itself violated his due process, nor did he articulate his concerns regarding witness testimony at the restraining order hearing. Put simply, Plaintiff's request that this Court infer that his allegations demonstrate that Defendants deprived him of due process is not reasonable. *See Schildt v. F.B.I.*, 113 F.3d 1247, * 4 (10th Cir. 1997) (unpublished table decision) ("In order to establish that Sheriff [] violated his

due process rights [pursuant to § 1983], plaintiff would have to prove that the affidavit filed by the Sheriff was untruthful.") (citing *St. John v. Justmann*, 771 F.2d 445, 448 (10th Cir. 1985)); *see also Kerlikowske*, 237 F. App'x at 160. Thus, Plaintiff has failed to state a plausible claim for constitutional deprivation of his rights.

### III.    CONCLUSION

Based on the foregoing, Defendants' Motions to Dismiss (Doc. ## 18, 21) are GRANTED. It is

FURTHER ORDERED that Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE in its entirety.

DATED: July  09 , 2014

BY THE COURT:

*[signature: Christine M. Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge